UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Commission Express National, Inc.,

                Plaintiff,           CV-03-4050 (CPS)

    - against -                MEMORANDUM
                                      OPINION AND ORDER
Abhijit Rikhy d/b/a Quik Commission,

                Defendant.

----------------------------------------X

SIFTON, Senior Judge.

      Plaintiff, Commission Express National, Inc. ("Commission Express") brought this action against defendant Abhijit Rikhy d/b/a Quik Commission ("Rikhy") alleging claims of (1) conversion; (2) misappropriation of trade secrets; and (3) tortious interference with contract. The parties resolved the dispute by Final Consent Decree ("Consent Decree") which was "so ordered" on December 13, 2004. On June 13, 2005, by Memorandum Opinion and Order ("June Order") the defendant was found to have violated the Consent Decree and the parties were directed to undertake discovery regarding the size of the compensatory sanction. The plaintiff was also directed to file a motion for attorney's fees at the conclusion of that discovery. Now before this Court is plaintiff's motion requesting that defendant be forced to disgorge profits earned in violation of the Consent Decree and plaintiff's application for attorney's fees and disbursements. For the reasons set forth below plaintiff's motion

for disgorgement of profits in the amount of $55,064.35 is
granted and the application for attorney's fees and disbursements
is granted in the amount of $20,288.21.

BACKGROUND

The following facts are draw from the submissions of the
parties. They are undisputed except where noted.

Defendant Amitijit Rikhy operates a business known as "Quik
Commission." Both Quik Commission and Commission Express are
competitors in the real estate commission advance industry. Both
companies provide cash advances to real estate agents who have
completed sales but whose commissions are pending.

On August 18, 2003, Commission Express filed a complaint in
this Court against Rikhy alleging claims of: (1) conversion; (2)
misappropriation of trade secrets; and (3) tortious interference
with contract. The complaint alleged that Rikhy had made use of
Commission Express's manuals, forms, and advertisements, as well
as pricing and marketing strategies. Rikhy had also allegedly
made efforts to acquire a copy of Commission Express of New
York's (a franchisee of Commission Express) customer list.
Commission Express sought compensatory damages in excess of
$75,000 and punitive damages in excess of $225,000.

The parties resolved the dispute by Consent Decree, which I
"so ordered" on December 13, 2004. The Consent Decree enjoined
Rikhy for a period of two years from soliciting or contacting

Commission Express of New York's customers.   In the Consent

Decree, §4(c)(2) Rikhy represented and warranted in relevant part

that

> he understands the allegations made by Commission
> Express, including that he has copied and made use of
> the following forms of Commission Express: (1)
> Application to Sell Receivable; (2) Master Repurchase
> and Security Agreement (Broker); (3) Master Repurchase
> and Security Agreement (Agent); (4) Notice of
> Assignment (To Settlement Agent by Broker); (5) Notice
> of Assignment (To Settlement Agent by Agent); (6)
> Account Receivable Sale and Assignment Agreement
> (Broker Advance & Holdback to Broker); (7) Account
> Receivable Sale and Assignment Agreement (Agent:
> Advance & Holdback to Agent); (8) Certification
> (collectively "Commission Express Forms").

In §4(c)(3) Rikhy also represented and warranted that:

> he has redrafted all forms that he presently uses in
> connection with the operation of Quik Commission or any
> other business, so that they are not now the same or
> substantially similar to the Commission Express Forms.
> The redrafted forms include as follows: (1)
> Application; (2) Secured Sale Agreement; (3) Account
> Receivable Sale and Assignment Agreement (Sales
> Agent)(collectively "Rikhy Forms").

In §4(c)(4) Rikhy then agreed to

> permanently cease and desist from using forms that are
> the same or substantially similar to the Commission
> Express Forms or any other form used by Commission
> Express and Commission Express of New York.

In §4(c)(5) Commission Express consented to and approved Rikhy's

use of the three Rikhy Forms listed in §4(c)(3).

On April 1, 2005 the plaintiff filed a motion seeking

enforcement of the Consent Decree on the grounds that Rikhy

continued to use certain forms substantially similar to those

used by Commission Express. Commission Express stated that it did
not at that time have full information concerning the number of
transactions that Rikhy had engaged in using forms in violation
of the Consent Decree. Commission Express did, however, cite some
specific violations of the consent decree. Specifically,
according to Joseph Giovannelli, Vice-President of Commission
Express, Rikhy had solicited customers using a "Quik Commission
Certificate" and an "Answer Sheet" similar to those used by
Commission Express. Rikhy's solicitation also included
"testimonials" from satisfied customers. Giovannelli stated that
these testimonials are from Commission Express of New York
customers who Rikhy is enjoined from contacting. Giovannelli
stated that these forms and testimonials could also be viewed on
the Quik Commission Website.[1] Also available on the Quik
Commission website according to Giovannelli was a "Question and
Answer Sheet," which was substantially similar to the Commission
Express "Question and Answer Sheet."

On June 13, 2005 I found that Rikhy's use of the Quik
Commission Certificate and Answer sheet violated the Consent
Decree and ordered discovery on the issue of what transactions
Rikhy had engaged in which violated the Consent Decree. I also
ordered Rikhy to disgorge profits obtained in connection with his

---

[1] Rikhy stated that although the use of testimonials was not a subject
of the Consent Decree he agreed to remove them from his website within "a
reasonable period of time."

actions in violation of the consent decree and ordered discovery regarding the size of the compensatory sanction. Upon completion of discovery I ordered Commission Express to file a motion for attorney's fees.

DISCUSSION

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974); *see also S.E.C. v. Credit Bancorp, Ltd.*, 232 F. Supp.2d 260, 264 (S.D.N.Y. 2002). To establish contempt, a movant must show: (1) a clear and unambiguous order; (2) clear and convincing proof of non-compliance; and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *Perez v. Danbury Hosp.*, 347 F.3d 419, 423-424 (2d Cir. 2003).

Plaintiff alleges that defendant has engaged in 55 transactions using forms that violate the Consent Decree. Three of these transactions, the Mosca, Rodriguez and Mcray-Gleba transactions, utilized the Quik Commission Certification or Question and Answer form which I explicitly held to violate the Consent Decree in my June Order. Defendant concedes that these three transactions violate the consent decree and my June Order and that their cumulative profits of $3,729.50 must be disgorged.

Plaintiff alleges that the remaining 52 transactions violate the Consent Decree because they use a "Notice of Assignment"

which is substantially similar to that used by the plaintiff.[2]
The defendant argues that these transactions are outside the
scope of the June Opinion, have not explicitly been found to
violate the Consent Decree and do not violate the Consent Decree.
Defendant first argues that "the contempt motion proceeded on a
complaint that Defendant was using marketing materials violative
of the consent decree to solicit clients." (Def. Br. 21). In his
view, plaintiff can therefore only obtain disgorgement of profits
resulting from transactions which concerned solicitation or
marketing. Because defendant believes that the Notice of
Assignment does not concern solicitation or marketing he argues
that profits based on its use cannot be disgorged.

Even assuming defendant's distinction is correct, and that
the Certification and Question and Answer Forms concern
solicitation and marketing while the Notice of Assignment does
not, this distinction is of no significance.[3] My June Order
specifically recognized that "Commission Express states that it
does not presently have information concerning the number of

---

[2] Plaintiff has two Notice of Assignment forms; one to a settlement
agent by a broker, and one to a settlement agent by a an agent. Plaintiff does
not specify if defendant's Notice of Assignment is substantially similar to
one or both Notice of Assignment forms, but provides only the agent by agent
form for comparison. Thus, for purposes of this opinion, I treat the relevant
comparison as being between the plaintiff's Agent to Agent Notice of
Assignment and defendant's Notice of Assignment.

[3] Plaintiff states that the Certification form is in fact used primarily
for effectuating transactions and not for marketing purposes. Giovannelli
Declaration in Support of Plaintiff's Motion to Enforce the Consent Decree
Exs. 2 and 7.

transactions that Rikhy has engaged in using forms in violation
of the Consent Decree" and accordingly stated that "[d]iscovery
on this issue is appropriate." Order at 6-7. I in no way limited
the impact of the June Order to those forms used for marketing or
solicitation or to the specific forms referenced in plaintiff's
motion. I thus ordered Rikhy to "disgorge *all* profits earned from
transactions in violation of the consent decree." Order at 1
(emphasis added). Although I did not consider whether the Notice
of Assignment violated the Consent Decree in my June Order, I may
consider the issue now and if I find that the Notice of
Assignment violates the Consent Decree then plaintiff will be
entitled to disgorgement on transactions using the Notice of
Assignment form as well. I thus turn to the issue of whether the
Notice of Assignment violates the Consent Decree.

Rikhy presents three arguments as to why the Notice of
Assignment does not violate the Consent Decree. First, he argues
that the form is not proprietary to Commission Express. Second he
argues that plaintiff gave permission for him to use this form in
a letter dated October 5, 2004. Third, he argues that the form is
not substantially similar to the Notice of Assignment forms used
by Commission Express.

Defendant's first argument that the form is not proprietary
to Commission Express is irrelevant here. Such an argument might
be appropriate during a litigation of the underlying suit for

conversion, misappropriation of trade secrets, and tortious interference with contract. However, the current issue is not whether Rikhy's use of the forms violates the law, but whether it violates the Consent Decree. The proprietary nature of the forms is irrelevant to a showing that the defendant violated the Consent Decree. *Perez*, 347 F.3d at 423-24 (to establish violation of a consent decree there need only be a clear and unambiguous order, clear and convincing proof of non-compliance and the contemnor has not diligently attempted to comply in a reasonable manner.)

Rikhy's second argument is that Commission Express approved his Notice of Assignment Form in a letter dated October 5, 2004. Rikhy has not provided a copy of this letter. The copy provided by the plaintiff demonstrates that the plaintiff did not give Rikhy permission to use the Notice of Assignment form. Rather, the letter was merely part of the back and forth negotiation between the two parties as to what forms Commission Express would approve for use by Rikhy in the Consent Decree. In fact, according to plaintiff, on October 15, 2004 plaintiff's counsel memorialized to Rikhy that the revised Notice of Assignment was not acceptable.

In any event, the negotiations between the two parties as to this form are irrelevant because the interpretation of a consent decree may be discerned within the four corners of the document

and does not require resort to parol evidence. *Perez*, 347 F.3d at 424. The Consent Decree itself states that "[t]his Agreement constitutes the entire agreement and understanding of the parties hereto, and supercedes any prior agreements, understandings, representations, and warranties concerning the subject matter hereof . . ." Thus, Commission Express can only be considered to have consented to Rikhy's use of the Notice of Assignment form if the Consent Decree itself memorialized Commission Express's consent.

Rikhy's last argument is that his Notice of Assignment is not substantially similar to the Notice of Assignment used by Commission Express.[4] Rikhy states that his Notice of Assignment and that used by Commission Express are both merely designed for recording information and that there are not a multitude of ways to convey this information. Thus, Rikhy is not arguing that the forms are not substantially similar, but rather that there is no

---

[4] The Consent Decree itself does not define the term "substantially similar" and the parties make no argument as to its particular meaning, rather, they conclusorily state that the forms are or are not substantially similar. The term is given particular meaning in other legal contexts. For example, in the copyright context, The standard test for substantial similarity between two items is whether an " ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Yurman Design Inc., v. PAJ Inc.,* 262 F.3d 101, 111 (2d Cir 2001)(citations omitted.). In the Title VII context, a plaintiff must accept "substantially similar" employment. "In order to be substantially similar to a plaintiff's former position, the new position must afford him or her virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status as the former position." *Reilly* v. *Cisneros*, 835 F.Supp. 96, 100 (W.D.N.Y. 1993). As discussed above, whatever the meaning given to "substantially similar" it must include the present case in which two documents are virtually identical both in form and in substance.

way to make them different. While recognizing that a form solely
designed to convey information may have a limited number of
appearances, it would be difficult for Rikhy to have a Notice of
Assignment more similar to that of Commission Express. Each form
contains the name of the respective company at the top left and
its address at the top right, with a line separating that header
from the actual form. Below the line each is titled "Notice of
Assignment." Each contains virtually identical "To" and "From"
sections. On each form this section is followed by a line for the
contract date, and then a line for the property address and a
line for the names of the buyer and seller. Each form then
contains six numbered statements, which, with the change of only
a word or two, are identical. Following the six statements each
contains identically laid out signature lines for the sales agent
and broker. On each, the sales agent is provided only one line to
sign his name and the broker is provided two lines, one to sign
his name, and one to print his name. These signature lines are
followed on each form by a section entitled "Acknowledgment of
Assignment." The language of the two Acknowledgment of Assignment
sections is also virtually identical except that each contains
the name of its respective company. Both forms end with a
signature line for the seller's agent and for a representative of
the company. Other than the slightly smaller typeface on the Quik
Commission form, the two forms are laid out identically. Thus,

the two forms are substantially similar. Furthermore, the content

of the Consent Decree clearly demonstrates that Rikhy was aware

of Commission Express's concern over the potential use of its

Notice of Assignment form, since the form is specifically listed

in section 4(c)(2) as one which Commission Express believed Rikhy

had copied and made use of. Accordingly, Rikhy cannot now, and

does not now argue, that he diligently attempted to comply in a

reasonable manner. Accordingly, Commission Express has

established by clear and convincing evidence that all 55

referenced transactions constitute violations of the consent

decree by Rikhy.

<u>Remedy</u>

The purpose to be served by the imposition of sanctions

after a finding of civil contempt are (1) to coerce future

compliance and (2) to remedy any harm past compliance caused the

other party. *Paramedics Electormedicina Comercial, LTD. v. GE*

*Med. Sys. Info. Tech.,* 369 F.3d 645, 657 (2d Cir. 2004).

Commission Express seeks compensatory relief in the amount of any

profits Rikhy has derived from the use of its forms in violation

of the Consent Decree. Injury for the purposes of a compensatory

sanction may be shown under a theory of unjust enrichment.

*Manhattan Indus., Inc., v. Sweater Bee,* 885 F.2d 1 (2d Cir.

1989). In similar situations, courts award the profits derived

from the contemnor through violation of the court order. *Id.* at

6. Accordingly, Commission Express is entitled to any profits Quik Commission derived from transactions involving the forms in question. Commission Express calculates, and Rikhy does not dispute, that his total profit from the 55 referenced transactions totals $55,064.35. Accordingly, Rikhy is ordered to disgorge this amount.

Attorney's Fees

The Consent Decree states that "[i]n the event that any party breaches this Agreement or the Final Consent Decree, and should litigation ensue, the prevailing party in that litigation shall be entitled to their costs, including reasonable attorney's fees, from the breaching party, incurred as a result of such breach." In the June Order I therefore held that Commission Express was entitled to reasonable attorney fees and costs when it submitted appropriate documentation. Order at 9.

According to the Supreme Court, the lodestar figure is used to determine reasonable attorneys fees. The lodestar figure "is arrived at by multiplying the number of hours reasonably expended on the litigations . . . by an hourly rate." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir. 1998). In the Second Circuit "any attorney . . . who applies for court-ordered compensation . . . must document the application with contemporaneous time records. These records should specify, for each attorney, the date, hours expended and the nature of the

work. *New York State Ass'n for Retarded Children, Inc., v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). However, "[i]t is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures." *Aiello v. Town of Brookhaven*, 2005 WL 1397202, *9 (E.D.N.Y. 2005)(citing *Perdue v. City Univ. of New York*, 13 F.Supp.2d 326, 345 (E.D.N.Y. 1998).

Defendant argues that plaintiff's counsel's time records, are unacceptably vague. Although plaintiff's counsel does provide specific descriptions of its work, in many entries multiple tasks are listed as being completed in a single block of time. This "commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities." *Soler v. G&U Inc.,* 801 F.Supp. 1056, 1061-62 (S.D.N.Y 1992). The remedy for such "block" accounting is to apply percentage cuts in the attorneys fees. *Sea Spray Holdings, Ltd., v. Pali Fin Group, Inc.,* 277 F.Supp 2d 323, 326 (S.D.N.Y. 2003)(reducing requested fee by fifteen percent); *Gonzalez v. Bratton*, 147 F.Supp 2d 180, 213 (S.D.N.Y. 2001)(reducing the requested fees by twelve percent); *Aiello*, 2005 WL 1397202 at *9(reducing the requested fees by ten percent). Because the attorneys here engaged in some block billing but also presented some more specific entries, I find that a ten percent reduction of the hours billed by plaintiff's counsel is appropriate.

Defendant next complains that plaintiff has not offered professional biographies for the personnel who worked on this case and that accordingly, it is impossible to determine if their billing rates are reasonable. Five people worked on plaintiff's case: Michael Hahn (a senior associate), David Tomeo (a partner), Stephen Buckingham (a partner), Diane Claussen (a paralegal), and Kelly Charles (a paralegal). According to counsel's billing records, these personnel bill at the following rates: Michael Hahn - $228.21;[5] David Tomeo - $341.25; Stephen Buckingham - $300; Dianne Claussen - $125; Kelly Charles - $110.

Plaintiff has now offered professional biographies indicating that he is a senior associate focusing on complex litigation and the co-author of several articles on that subject, that Steven Buckingham is a partner at Lowenstein Sandler and a patent attorney with more than twelve years experience that David Tomeo is a partner at Lowenstein Sandler; that Diane Clausen is a paralegal with 8 years of experience and that Kelly Charles is a graduate of Rutgers Law School and has worked as a paralegal at Lowenstein Sandler since 2003. Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates and $200 to $250 for senior associates. *Aiello* 2005 WL 1397202 at *18 (collecting

---

[5] Michael Hahn's billing rate changed in the course of this litigation from $220 per hour to $245 per hour. $228.21 represents his average billing rate for work on this case.

cases). Rates for paralegals range from $60-$75. *Fabri v. United Technologies Intern., Inc.,* 387 F.3d 109, 129 (2d Cir. 2004); *Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund v. Taher Contracting Co., Inc.,* 2005 WL 2654372, *3, (S.D.N.Y. 2005); *Kingvision Pay-Per-View, Ltd. v. Batista,* 2005 WL 2999427, *6 (E.D.N.Y. 2005); Martinez v. Port Authority of NY and NJ, 2005 WL 2143333, *26 (S.D.N.Y. 2005).

Plaintiff's counsel's requested rate for Michael Hahn is in the range for senior associates and the rate for Stephen Buckingham is within the range for partners. However the rates for David Tomeo, Diane Clausen and Kelly Charles are in excess of the prevailing rates. Although the lodestar may reflect such factors as "time and labor required, novelty and difficulty of issues, skill required, loss of other employment in taking the case, whether the fee is fixed or contingent, time limitations imposed by the client or circumstances, the amount involved and result obtained, counsel's experience, reputation and ability, the undesireablty of the case and the nature and length of the relationship with the client," *Aiello*, 2005 WL 1397202 at *18 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564-65(1986); *Krieger v. Gold Bond Bldg. Products*, 863 F.2d 1091, 1099 (2d Cir. 1988), there is no indication that any of these factors are present indicating that counsel's rates should be raised. Accordingly, the paralegals may

be billed at $75 per hour. David Tomeo, a partner may be billed

at $300 per hour.

Rikhy also objects to the requested attorney's fees because

he argues that five people worked on the file but the work could

have been done by one person. This argument is specious. First,

of the 99.30 hours billed by counsel, 88.00 hours or 88.6% were

billed by one person, Michael Hahn. Defendant cannot seriously

object that the 7.8 hours of work done by the paralegals should

have been done by Michael Hahn, since Mr. Hahn bills at a rate

approximately three times that of a paralegal. Nor was Mr. Hahn

obligated to do all the work entirely on his own without

consulting with a more senior attorney or partner. It is

extremely common for lawyers in a firm to work together and for

more junior attorneys to consult with more senior attorneys. *Ursa

Minor Ltd., v. Aon Fin. Prods. Inc,* 2001 WL 1842042, *6 (S.D.N.Y.

2001)(more than one attorney from a firm may appear in court on a

single matter).

Defendant argues however, that plaintiff's counsel wrongly

"double billed" by billing for the time of both Hahn and

Buckingham or Tomeo when he consulted with them. However, when

two attorneys work together on a case, both may bill for their

time. *Ursa Minor,* 2001 WL 1842042, *6 (S.D.N.Y. 2001)(When

multiple attorneys appear in court on a single matter each may

bill for his time). Furthermore, Hahn did not frequently or

unnecessarily consult with his more experienced colleagues. Rather, he discussed case strategy with Steven Buckingham for a total of only 3.4 hours and consulted with David Tomeo for only 18 minutes.

Incorporating the above, the fees can be calculated as follows:

Hahn:

    59.1 hours at $220 = $13,002

    28.9 hours at $245 = $7,080.5

Tomeo:

    .3 hours at $300 = $90

Buckingham:

    3.4 hours at $300 = $1,020

Paralegals (combined):

    7.8 hours at $75 = $585

Total Legal Hours Billed:

    ($13,002 + $7,080.5 + $90 + $1,020 + $585) = $21,775.5

Total Legal Hours Billed – 10% = $19,599.75


Plaintiff's counsel also requests $688.46 in disbursements for phone calls, copying, legal research, printing, local travel, etc. These costs are reasonable. Accordingly, defendant is directed to pay plaintiff's legal fees and disbursements in the total amount of $20,288.21.

CONCLUSION

For the reasons set forth above the defendant is directed to disgorge profits in the amount of $53,064.45 and to pay plaintiff's attorney's fees in the amount of $20,288.21.

The Clerk is directed to enter a judgment in favor of Commission Express against Rikhy in the amount of $53,064.45 plus costs to be taxed by the Clerk and to transmit a copy of the within to the parties and to the Magistrate Judge.


        SO ORDERED.

Dated :   Brooklyn, New York

          February 16, 2006


              By: /s/ Charles P. Sifton (electronically signed)
                  United States District Judge